1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WARREN E. DELONG,

11              Petitioner,                    No. CIV S-04-0946 FCD DAD P

12        vs.

13   MIKE KNOWLES, Warden,

14              Respondent.              <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a prison disciplinary

18   conviction that resulted from a rules violation report issued against him at Mule Creek State

19   Prison on March 24, 2002.  Petitioner seeks relief on numerous due process grounds related to

20   the conduct of the disciplinary hearing.  Upon careful consideration of the record and the

21   applicable law, the undersigned will recommend that petitioner's application for habeas corpus

22   relief be denied.

23                              BACKGROUND

24              On March 27, 2002, Correctional Officer Hoover wrote a rules violation report

25   charging petitioner with "destruction of state property."  (Answer, Ex. B at consecutive p. 1.)

26   Officer Hoover alleged that at 10:20 a.m. on March 24, 2002, he found "dangerous contraband

1

1    and altered stated (sic) property" in petitioner's cell and on his bunk.  (Id.)  The state property

2    consisted of: (1) two loose razor blades; (2) one screw; (3) one toothbrush which appeared to

3    have been "in the process" of being altered to resemble a flat-tipped screwdriver; (4) one wool

4    blanket, cut in half; (5) one sheet with the edge ripped off; and (6) one clothes line made from the

5    damaged sheet.  (Id.)  Officer Hoover also reported that he asked petitioner whether the cup

6    containing the toothbrush and razor blades belonged to him.  (Id. at consecutive p. 4.)  Petitioner

7    responded, "Yeah, so what?"  (Id.)  Petitioner told Officer Hoover that he wanted a "search

8    receipt."  (Id.)  Officer Hoover responded that the receipt was in petitioner's cell.  (Id.)

9           On March 28, 2002, the charge against petitioner was amended by Correctional

10   Lieutenant D.D. Brown from "destruction of state property" to "possession of dangerous

11   property."  (Answer, Ex. C at 2.)  This change was made because petitioner "had in his

12   possession two loose razor blades, which presented a potential danger to staff and/or other

13   inmates."  (Id. at 2-3.)[1]  Petitioner was given a copy of the rules violation report, containing the

14   amended charge, on March 31, 2002.  (Answer, Ex. B at consecutive p. 1.)

15          On March 31, 2002, petitioner requested a staff assistant to help him prepare for

16   the disciplinary hearing, on the grounds that he could not read.  (Id. at consecutive p. 5.)

17   Petitioner also requested an investigative employee.  (Id.)  Prison officials did not assign a staff

18   assistant or an investigative employee to assist petitioner because he "[did] not meet the criteria"

19   set forth in California Code of Regulations §§ 3315(d)(1) and (d)(2).[2]  (Answer, Ex. B at

20

21          [1]  As described below, petitioner claims that the charge against him was not amended
     prior to the disciplinary hearing by Correctional Lieutenant Brown, but rather was changed at the

22   hearing by the hearing officer.  (Traverse at 4.)

23          [2]  Those code sections provide, in relevant part, as follows:

24          (d) An inmate shall be assigned an employee to assist in the
            investigation of matters pertaining to a disciplinary action when the

25          chief disciplinary officer or designee determines the necessity
            based on the following criteria.

26
            (1) Investigative Employee.

                                                       2

1   consecutive p. 2.)  Petitioner also requested that Officer Hoover and inmate Armendariz

2   (petitioner's cellmate) be present at the disciplinary hearing as witnesses.  (<u>Id.</u>)

3           On April 11, 2002, the disciplinary hearing on the rules violation report was held.

4   (<u>Id.</u> at consecutive pgs. 1-3. )  Prior to the hearing, petitioner "was read and acknowledged

5   understanding the charge filed against him."  (<u>Id.</u> at consecutive p. 2.)  Petitioner stated that he

6   was ready to proceed.  (<u>Id.</u> at consecutive p. 1.)  All written evidence was issued to petitioner at

7   least 24 hours prior to the hearing.  (<u>Id.</u>)  All time deadlines were met.  (<u>Id.</u>)  Petitioner pled not

8   guilty to the charge against him, stating that "he [Officer Hoover] just tore my area of the cell

9   up."  (<u>Id.</u> at consecutive p. 2.)

10

---

11
12
13
(A) An investigative employee, as described in section 3318(a), shall be assigned, within one working day after the serious rule violation charges have been submitted for processing when the chief disciplinary officer or designee determines that:

14   1. The complexity of the issues require further investigation.

15
16
2. The housing status makes it unlikely the charged inmate can collect and present the evidence necessary for an adequate presentation of a defense.

17
18
3. A determination has been made that additional information is necessary for a fair hearing even if the inmate has waived the assignment.

19   (2) Staff Assistant.

20
21
(A) The inmate shall be assigned a staff assistant, as described in section 3318(b), to assist in the investigation, preparation, and presentation of a defense at the disciplinary hearing if the chief disciplinary officer or designee determines:

22   1. The inmate is illiterate or non-English speaking.

23
24
2. The complexity of the issues are such that assistance is necessary so the inmate comprehends the nature of the charges or the disciplinary process

25
26
3. The nature of the inmate's need for assistance requires a confidential relationship as described in subsection 3318(b)(2)(A).

1    At petitioner's request, Officer Hoover was called as a witness.  (Id.)  In response

2  to questioning by petitioner, Officer Hoover stated that he had searched petitioner's cell.  (Id.)

3  Officer Hoover denied that he put the razor blades in the cell.  (Id.)  Upon questioning by the

4  senior hearing officer, Officer Hoover stated that a cup containing razor blades was found on

5  petitioner's property shelf and that petitioner told Officer Hoover the cup belonged to him.  (Id.)

6  Petitioner's request that his cellmate be made available as a witness at the hearing was denied on

7  the grounds that "inmate Armendariz was not present during the search.  Therefore, he could not

8  provide relevant information."  (Id.)[3]

9    Petitioner was found guilty of possession of dangerous property based on the rules

10  violation report and his admission that he owned the cup which contained the razor blades.  (Id.)

11  Petitioner was assessed a loss of 120 days of behavioral credits and a loss of 30 days of yard

12  privileges for this Division C-3 offense.  (Id. at consecutive p. 3.)

13

14    [3]  California Code of Regulations § 3315(e) provides, in relevant part, as follows:

15    (e) Witnesses. An inmate may request that friendly and adverse
16    witnesses attend the hearing.

17    (1) Requested witnesses shall be called unless the official
     conducting the hearing denies the request for one of the following
18    reasons:

19    (A) The appearance would endanger the witness.

20    (B) The official determines that the witness has no relevant or
     additional information.

21    (C) The witness is unavailable.

22                                    * * *

23    (4) The reporting employee shall attend the disciplinary hearing if
24    requested by the inmate.

25    (5) Under the direction of the official conducting the disciplinary
     hearing, the inmate has the right to ask questions of all witnesses
26    called.

4

1    Respondent concedes that petitioner exhausted the administrative appeal process

2  and his state judicial remedies with respect to the March 27, 2002 rules violation report and

3  resultant disciplinary proceeding.  (Answer at 5.)

4                                    ANALYSIS

5  I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

6    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

7  some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860,

8  861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v.</u>

9  <u>Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

10  interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

11  <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas

12  corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377

13  (1972).

14    This action is governed by the Antiterrorism and Effective Death Penalty Act of

15  1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

16  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

17  habeas corpus relief:

18         An application for a writ of habeas corpus on behalf of a
           person in custody pursuant to the judgment of a State court shall
19         not be granted with respect to any claim that was adjudicated on
           the merits in State court proceedings unless the adjudication of the
20         claim -

21         (1) resulted in a decision that was contrary to, or involved
           an unreasonable application of, clearly established Federal law, as
22         determined by the Supreme Court of the United States; or

23         (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
24         State court proceeding.

25  28 U.S.C. § 2254(d).  <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v.</u>

26  <u>Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

1         The court looks to the last reasoned state court decision as the basis for the state

2   court judgment.  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

3   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

4   federal habeas court independently reviews the record to determine whether habeas corpus relief

5   is available under section 2254(d).  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003);

6   <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

7   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

8   AEDPA's deferential standard does not apply and a federal habeas court must review the claim

9   de novo.  <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir. 2003); <u>Pirtle v. Morgan</u>, 313 F.3d 1160,

10  1167 (9th Cir. 2002).

11  II.  <u>Petitioner's Claims</u>

12      A.  <u>Description of Claims</u>

13        Petitioner raises numerous challenges to the April 11, 2002 disciplinary decision.

14  Specifically, he claims that his rights pursuant to the Fifth, Sixth and Fourteenth Amendments

15  were violated because: (1) the rules violation report was fabricated by Officer Hoover because

16  petitioner's cell was not searched on March 24, 2002 (Pet. at 4, 15); (2) petitioner was

17  improperly denied the opportunity to call his cellmate as a witness at the disciplinary hearing (<u>id.</u>

18  at 4, 12-13, 17); (3) his cell was not searched and contraband was not discovered in his cell on

19  March 24, 2002 (<u>id.</u> at 4, 8)[4]; (4) he did not receive a property receipt ("cell inspection/search

20  slip") after the search of his cell and no such receipt exists to document that his cell was searched

21  on March 24, 2002 (<u>id.</u> at 8, 13); (5) he was improperly denied a staff assistant at the disciplinary

22  hearing with "no reason given," even though petitioner is illiterate (<u>id.</u> at 9-10, 12); (6) the charge

23  against petitioner was improperly changed by the hearing officer at the disciplinary hearing from

24  

25      [4] Petitioner states and provides evidence that his cell was searched the following day,

26  March 25, 2002, and that the officer who carried out that search found one container of wax.
(Traverse at 1 & Ex. A.)

1  "destruction of state property" to "possession of dangerous property" and petitioner was not

2  given advance notice of this change (id. at 13-14; Traverse at 11, 13); (7) petitioner was advised

3  by the hearing officer that he was guilty no matter what he had to say (Pet. at 12); (8) petitioner's

4  request for a continuance of the disciplinary hearing on the grounds that he was not going to get a

5  fair hearing and that he had not received a response to his request for a staff assistant were

6  improperly denied (id.); (9) all of the statements made in the rules violation report, including the

7  statements that petitioner "read and acknowledged understanding the charge filed against him"

8  and that petitioner stated "he just tore my area of the cell up" were false because petitioner "made

9  no statement period" (id. at 12, 15); and (10) petitioner did not receive a fair hearing with an

10 impartial adjudicator because the same hearing officer who amended the charge against petitioner

11 also determined his guilt (id. at 14, 16, 17).  Finally, petitioner claims that the California courts

12 erred in denying his petitions for a writ of habeas corpus because they failed to take the foregoing

13 factors into consideration in reaching the conclusion that petitioner's constitutional rights were

14 not violated at the disciplinary hearing.  (Id. at 5, 17-18; Traverse at 8.)

15         Petitioner has provided the following argument and evidence in support of the

16 claims described above.  First, petitioner states that his cell mate, inmate Armendariz, was

17 present in their shared cell on March 24, 2002, and that Armendariz would have testified at the

18 disciplinary hearing that no cell search occurred on that date.  (Pet. at 10.)  In support of this

19 contention, petitioner has filed the declaration of inmate Armendariz, who states that he was in

20 the cell he shared with petitioner "all morning until afternoon yard release" and that the cell was

21 not searched.  (Traverse, Ex. C.)  Petitioner also provides evidence that he requested a copy of a

22 cell search receipt for March 24, 2002, but that he was unable to obtain one.  (Traverse, Ex. K.)[5]

23 Petitioner speculates that Officer Hoover may have made a "human error" and searched the cell

24 of some other prisoner on March 24, 2002.  (Pet. at 13.)

25

26         [5]  The record does not reflect whether such a cell search receipt ever existed or not.

7

In support of his argument that he was improperly denied a staff assistant at the disciplinary hearing, petitioner provides evidence that on January 9, 2002, in connection with an annual review, prison authorities noted that petitioner's most recent educational scores "reflect a reading score of 1.9 and as such he is still required to attend an academic program." (Pet. at 50.) Petitioner states that he is illiterate. (Id. at 11.) He states that prison regulations require that a staff assistant be appointed to help illiterate inmates at disciplinary proceedings.

In support of his argument that he did not receive advance notice of the increased charge against him because the charge was changed by the hearing officer at the disciplinary hearing, and not by Lieutenant Brown prior to the hearing, petitioner provides a partially illegible copy of the rules violation report, which specifies that petitioner is charged with "destruction of state property." (Traverse, Ex. B.) Petitioner has also filed an identical copy of the rules violation report, but this one shows a line through the charge and, in handwriting, the words "poss. of dangerous property." (Traverse, Ex. D; see also Traverse at 32.) This second document appears to have been signed by Lieutenant Brown on March 28, 2002. (Traverse, Ex. D.) Petitioner states that he received the first document on March 31, 2002, and that the second document reflects the changes made at the disciplinary hearing. (Traverse at 32.) Petitioner contends that these documents prove he did not receive notice that he was being charged with possession of dangerous property until he appeared at the disciplinary hearing. (Id. at 32-33.) Petitioner also contends that the rules violation report relied on by respondent to demonstrate that he did have advance notice has been falsified. (Id.)

In support of their answer, respondent has filed the declaration of Lieutenant Brown. (Answer, Ex. C.) Mr. Brown is a Correctional Lieutenant, whose responsibilities include reviewing and classifying rules violation reports prior to their issuance to an inmate. (Id.) Mr. Brown declares under penalty of perjury that on March 28, 2002, he reviewed the rules violation report against petitioner and changed the charge from destruction of state property to /////

8

1   possession of dangerous property.  (Id.)  Mr. Brown also declares that the rules violation report,

2   reflecting the amended charge, was given to petitioner on March 31, 2002.  (Id.)

3       B.  State Court Opinion

4           The California Superior Court denied all of petitioner's claims regarding the

5   alleged deficiencies at his disciplinary hearing, reasoning as follows:

6         A prisoner is entitled to some due process protection in prison
          disciplinary proceedings.  (In re Estrada (1996) 47 Cal.App.4th

7         1688, 1694.)  However, the exact nature of the due process
          safeguards that is constitutionally required depends on a balancing

8         of the prisoner's liberty interest with the "legitimate institutional
          needs and objectives of the prison."  (Id.)  In Wolff v. McDonnell

9         (1974) 41 L.Ed.2d 935, at 951 the court held that a an (sic) inmate
          subject to a loss of credits must receive the following:  (1) advance

10        written notice of the disciplinary charges, (2) an opportunity to call
          witnesses and present documentary evidence in his defense, and (3)

11        a written statement by the fact finder which sets forth the evidence
          relied upon and the reasons for the disciplinary action.  Some

12        evidence, "but not necessarily 'substantial' evidence must support
          a disciplinary finding which revokes custody credits."  (In re

13        Estrada, supra, citing Superintendent v. Hill (1985) 86 L.Ed.2d
          356, 363-365.)

14
          The evidence presented at the disciplinary hearing was sufficient to

15        support the hearing officer's decision.  The petition is denied.

16  (Pet. at 52-53.)

17      C.  Applicable Law

18          It is well established that inmates subjected to disciplinary action are entitled to

19  certain procedural protections under the Due Process Clause but are not entitled to the full

20  panoply of rights afforded to criminal defendants.  Wolff v. McDonnell, 418 U.S. 539, 556

21  (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal, 549

22  F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the

23  least amount of due process along the prosecution continuum).  An inmate is entitled to advance

24  written notice of the charge against him as well as a written statement of the evidence relied upon

25  by prison officials and the reasons for any disciplinary action taken.  See Wolff, 418 U.S. at 563.

26  /////

                                            9

1    In the disciplinary hearing context, an inmate does not have a right to counsel, retained or

2    appointed, although illiterate inmates are entitled to assistance.  Id. at 570.[6]

3              An inmate has a right to a hearing at which he may "call witnesses and present

4    documentary evidence in his defense when permitting him to do so will not be unduly hazardous

5    to institutional safety or correctional goals."  Wolff, 418 U.S. at 566.  See also Ponte v. Real, 471

6    U.S. 491, 495 (1985).  The right to call witnesses is subject to the "mutual accommodation

7    between institutional needs and objectives and the provisions of the Constitution."  Baxter v.

8    Palmigiano, 425 U.S. 308, 321 (1976) (citing Wolff, 418 U.S. at 556).  See also Serrano v.

9    Francis, 345 F.3d 1071, 1077 (9th Cir. 2003); Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir.

10   1989). "Prison officials must have the necessary discretion to keep the hearing within reasonable

11   limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as

12   well as to limit access to other inmates to collect statements or to compile other documentary

13   evidence."  Wolff, 418 U.S. at 566.   Prison officials may, but are not required to, explain their

14   reasons limiting an inmate's efforts to defend himself.  Ponte, 471 U.S. at 497.  Should prison

15   officials refuse to call a witness, they should explain their reasons in disciplinary proceedings or

16   later in court proceedings.  Id.; see also Bostic, 884 F.2d at 1274 (burden is on prison officials to

17   provide justifications for refusal).  So long as those reasons "are logically related to preventing

18   undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due

19   process requirements as outlined in Wolff."  Ponte, 471 U.S. at 497.  However, as a general rule,

20   _____

21        [6]  In Wolff, the Supreme Court also observed:

22             Where an illiterate inmate is involved, however, or whether the
             complexity of the issue makes it unlikely that the inmate will be
23             able to collect and present the evidence necessary for an adequate
             comprehension of the case, he should be free to seek the aid of a
24             fellow inmate, or if that is forbidden, to have adequate substitute
             aid in the form of help from the staff or from a sufficiently
25             competent inmate designated by the staff.

26   Wolff v. McDonnell, 418 U.S. 539, 570 (1974).

10

1   inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison

2   disciplinary hearings.  Id. at 510 (Marshall, J., dissenting).  See also Baxter v. Palmigiano, 425

3   U.S. 308, 322-233 (1976)

4       The disciplinary hearing must be conducted by a person or body that is

5   "sufficiently impartial to satisfy the Due Process Clause."  Wolff, 418 U.S. at 571.  The decision

6   rendered on a disciplinary charge must be supported by "some evidence" in the record.  Hill, 472

7   U.S. at 455.  A finding of guilt cannot be "without support" or "arbitrary."  Id. at 457.  The

8   "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any

9   reliable evidence in the record that could support the conclusion reached by the fact finder.

10  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56 and Cato v.

11  Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).  See also Barnsworth v. Gunderson, 179 F.3d 771,

12  773 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987).  Determining

13  whether this standard is satisfied does not require examination of the entire record, independent

14  assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint v. McCarthy,

15  801 F.2d 1080, 1105 (9th Cir. 1986).  Indeed, in examining the record, a court is not to make its

16  own assessment of the credibility of witnesses or re-weigh the evidence.  Hill, 472 U.S. at 455.

17  The question is whether there is any reliable evidence in the record that could support the

18  decision reached.  Toussaint, 801 F.2d at 1105.

19      Where a protected liberty interest exists, the requirements imposed by the Due

20  Process Clause are "dependent upon the particular situation being examined."  Hewitt v. Helms,

21  459 U.S. 460, 472 (1983).  The process due is such procedural protection as may be "necessary to

22  ensure that the decision . . . is neither arbitrary nor erroneous."  Washington v. Harper, 494 U.S.

23  210, 228 (1990).  In identifying the safeguards required in the context of disciplinary

24  proceedings, courts must remember "the legitimate institutional needs of assuring the safety of

25  inmates and prisoners" and avoid "burdensome administrative requirements that might be

26  susceptible to manipulation."  Hill, 472 U.S. at 454-55.  The requirements of due process in the

11

1   prison context involve a balancing of inmate rights and institutional security concerns, with a

2   recognition that broad discretion must be accorded to prison officials.  Wolff, 418 U.S. at

3   560-63; see also Baxter, 425 U.S. at 324.

4       D.  Analysis

5           This court concludes that petitioner received all the process that was due in

6   connection with the April 11, 2002 disciplinary hearing.  Respondent has provided evidence that

7   petitioner received advance written notice of the increased charge against him as well as a written

8   statement of the evidence relied upon by prison officials and the reasons for the disciplinary

9   action taken.  See Wolff, 418 U.S. at 563.  Petitioner was allowed to call Correctional Officer

10  Hoover as a witness at the disciplinary hearing.  Although petitioner was not allowed to call his

11  cellmate as a witness, prison authorities explained their reason for refusing to allow this witness

12  to testify.  The reason given, that petitioner's cellmate was not present during the search and

13  would therefore have no relevant evidence to give, is neither unreasonable nor improper since

14  prisoners do not have the right to call witnesses at disciplinary hearings whose testimony would

15  be irrelevant, repetitive or unnecessary.  Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002).

16  Cf. Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996) (a blanket policy denying permission

17  for inmates to have witnesses present during disciplinary hearings would violate due process).

18          Next, notwithstanding petitioner's assertion that he is "illiterate," the report of the

19  disciplinary hearing specifically provides that petitioner did not meet the criteria for assignment

20  of a staff assistant or an investigative assistant.  (Answer, Ex. B at consecutive p. 2.)  There is no

21  evidence in the record before this court that petitioner was unable to meaningfully participate in

22  the disciplinary proceedings.  The issues pertaining to the disciplinary action were not so

23  complex as to make it difficult for petitioner to collect and present evidence.  Further, the court

24  notes that petitioner's pleadings in this action are articulate, well-reasoned and supported with

25  numerous exhibits.  There is no evidence in the record establishing that petitioner is unable to

26  read or write.  Indeed, petitioner informs the court that he is a "jailhouse lawyer and helps other

1  prisoners with legal matters and work." (Pet. at 64.)  Under these circumstances, the court finds

2  that petitioner's right to due process was not violated by the prison authorities' refusal to provide

3  him with a staff assistant for purposes of the disciplinary hearing.  Finally, the findings of the

4  disciplinary board were supported by "some evidence" that carried "indicia of reliability."

5  Specifically, petitioner was convicted of the rules violation based on the testimony of Officer

6  Hoover and petitioner's admission that the cup containing the razor blades and toothbrush were

7  his.  (Answer, Ex. B at consecutive p. 2.)

8             Petitioner argues that Correctional Officer Hoover testified falsely at the

9  administrative hearing, that all of the evidence against him was manufactured, and that his cell

10  was not searched, nor was any property confiscated, on March 24, 2002.  Petitioner also contends

11  that he did not receive adequate notice of the increased charge against him and that all

12  documentary evidence to the contrary was backdated and forged by prison officials.  Finally,

13  petitioner argues that the hearing officer unilaterally amended the charge against him at the

14  disciplinary hearing and then found him guilty of that charge.  This court rejects those

15  contentions.  The documents provided by petitioner are insufficient to support his allegations in

16  this regard.  Further, as explained above, this court may not make its own assessment of the

17  credibility of witnesses or re-weigh the evidence.  Hill, 472 U.S. at 455.  After a review of the

18  entire record, including all of the exhibits filed by petitioner, this court concludes that petitioner's

19  constitutional rights were not violated in connection with the March 27, 2002 rules violation

20  report and subsequent disciplinary hearing.

21                                          CONCLUSION

22             Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

23  a writ of habeas corpus be denied.

24             These findings and recommendations are submitted to the United States District

25  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

26  days after being served with these findings and recommendations, any party may file written

13

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served and filed within ten days after service of the objections.  The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 28, 2008.


_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
delong946.hc

14